IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CALAMP WIRELESS NETWORKS          )
CORPORATION,                      )
                                  )
            Plaintiff,            )
                                  )
v.                                )    Civil Action No. 3:16cv906–HEH
                                  )
ORBCOMM, INC.,                    )
                                  )
            Defendant.            )

## MEMORANDUM OPINION
### (Granting Defendant's Partial Motion to Dismiss)

THIS MATTER is before the Court on Defendant ORBCOMM, Inc.'s Motion to Dismiss Count Two of Plaintiff CalAmp Wireless Network Corporation's two-count patent infringement Complaint. (ECF No. 23.) At issue in Count Two is U.S. Patent No. 6,850,839 ("the '839 Patent"), entitled "Time Sensitive Article Tracking Device." It claims a system and method for tracking an object by determining whether the object is presently located within a prescribed geographic area and taking appropriate action depending on whether the object is or is not within that area. ORBCOMM alleges that the '839 Patent is an abstract idea and therefore unpatentable subject matter pursuant to 35 U.S.C. § 101.

Both parties have filed memoranda of law outlining their respective positions. In its opening brief, ORBCOMM took the position that Count Two should be dismissed in its entirety. Count Two alleges infringement of Claims 1, 2, 4, 5, 9, 10, 11, 12, 13, 15, 16, 18, and 19 of the '839 Patent. However, ORBCOMM conceded in its reply brief that

Claims 4 and 5 are patent-eligible. Thus, the Court will not consider those claims in its analysis. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Local Civ. R. 7(J). For the reasons set forth below, the Court will grant ORBCOMM's Motion.

## I. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). Patent eligibility under 35 U.S.C. § 101 is an issue of law; as such, it is suitable for resolution on a motion to dismiss. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). The Court is permitted to make a patent eligibility determination at the Rule 12(b)(6) stage, so long as it has a "full understanding of the basic character of the claimed subject matter." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). In considering such a motion, the Complaint and patents-in-suit must be viewed in the light most favorable to the plaintiff. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1293 (Fed. Cir. 2016). As with all Rule 12(b)(6) motions, the Court's analysis is "limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (applying Federal Circuit and Ninth Circuit law); *see also Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

2

## II. DISCUSSION

Section 101 of the Patent Act describes the subject matter eligible for patent

protection.  It provides: "[w]hoever invents or discovers any new and useful process,

machine, manufacture, or composition of matter, or any new or useful improvement

thereof, may obtain a patent therefor, subject to the conditions and requirements of this

title." 35 U.S.C. § 101.  Section 101 also "contains an important implicit exception:

Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp.*

*Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular*

*Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).  However, a patent is

not rendered ineligible "simply because it involves an abstract concept." *Id.* (citing

*Diamond v. Diehr*, 450 U.S. 175, 187 (1981)).  "[A]pplication[s] of such concepts 'to a

new and useful end' . . . remain eligible for patent protection." *Id.* (quoting *Gottschalk v.*

*Benson*, 409 U.S. 63, 67 (1972)).

In *Alice*, the Supreme Court reiterated the two-step analytical framework "for

distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas

from those that claim patent-eligible applications of those concepts." *Id.* at 2355 (citing

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77–78 (2012)).  At the

first step, the Court must "determine whether the claims at issue are directed to one of

those patent-ineligible concepts." *Id.*  If so, the analysis moves to the second step, where

the Court asks "what else is there in the claims before us?" *Id.*  This second step is a

search for an "inventive concept"—i.e., an element or combination of elements that is

"sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo*, 566 U.S. at 73 (citations omitted).

It is with this framework in mind that the Court conducts its analysis. Claim 1, a representative claim of the '839 Patent[1], states:

> A method for determining whether an article tracking device is within a spatial zone, the method comprising the steps of:
> obtaining a current time and a current position of the device;
> determining a spatial zone that corresponds to the current time;
> determining whether the current position of the device is within the spatial zone; and
> sending a request to a server for a subset of server database records in response to the determination of whether the current position of the device is within the spatial zone.

'839 Patent B1 col. 6 ll. 2–14. Distilled to its essence, the '839 Patent claims a system and method of tracking an object by: (1) assessing the current location of the object; (2) obtaining the object's required location for the corresponding time; (3) determining whether the object is in the required location; and (4) requesting information in response to that determination. In other words, the Patent determines whether an object is in the right place at the right time.

---

[1] The Court need not specifically address each asserted claim. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1348 (Fed. Cir. 2014). Where the claims are "substantially similar and linked to the same abstract idea," analyzing a representative claim is sufficient. *Id.* CalAmp argues that Claim 1 is not representative because independent Claims 11 and 15 include additional components such as "position determination sensor," "memory," "processing module," "special zones database," and "action module." (CalAmp's Opp'n Br. 6, ECF No. 28.) However, Claims 11 and 15 are substantially similar to Claim 1 in that they involve determining whether an object's current position is within a prescribed area. Moreover, the terms that CalAmp identifies from Claims 11 and 15 are merely generic computer components, insufficient to confer patent eligibility. *See Alice,* 134 S. Ct. at 2359–60.

For the reasons that follow, the Court concludes that this method is an abstract idea that falls short at both steps of the *Alice* analysis. The '839 Patent is therefore unpatentable under § 101.

## A. Abstract Idea

Beginning at *Alice* step one, determining whether an object is in the right place at the right time, as claimed in the '839 Patent, falls squarely into a well-recognized category of claims directed to abstract ideas.

The Federal Circuit has established that the "realm of abstract ideas includes collecting information." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)). And merely analyzing that information "by steps people go through in their minds, or by mathematical algorithms" is insufficient to change the abstract nature of the information collection to something patentable. *Id.* Moreover, taking some action in response to the information is also "abstract as an ancillary part of such collection and analysis." *Id.* (notifying a user when misuse is detected is an abstract idea); *see also Elec. Power Grp.*, 830 F.3d at 1354 (presenting the results of information collection and analysis is an abstract idea).

In *FairWarning*, the Federal Circuit considered the validity of a patented method of determining whether a patient's protected health information had been misused. 839 F.3d at 1092. In that case, the patented method included: (1) collecting data about how the patient's health information had been accessed; (2) analyzing the data to determine if improper access had occurred; and (3) providing notification about any improper access.

5

*Id.* at 1093. The court held that this method was "directed to a combination of . . . abstract categories," merely implementing "an old practice in a new environment." *Id.* at 1094.

For the same reasons outlined in *FairWarning*, the claims of the '839 Patent, when considering their character as a whole, are directed towards the abstract idea of information collection and analysis. The Patent simply requires a user to collect information about an object's current position and required position, analyze that information by comparing the current and required positions, and then respond to that information. Like *FairWarning*, the claims here are focused on a combination of abstract-idea processes. *Id.*; *see also Elec. Power Grp.*, 830 F.3d at 1354. Moreover, humans have forever been using the method of the '839 Patent to determine if they, or some other object, is in the right place at the right time. This Patent is merely automates that process.

CalAmp argues that the '839 Patent is not directed to an abstract idea because it "integrat[es] a new type of geofencing rules that incorporate a time interval in addition to a spatial zone." (CalAmp's Opp'n Br. 5.) It analogizes the claims of the'839 Patent to those found valid by the Federal Circuit in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). However this analogy is misplaced. *McRO* involved a new method for producing realistic computer animation, incorporating rules for changing a character's facial expression. *Id.* at 1307. This process was completely different from any previous methods of animation. *Id.* In contrast, the '839 Patent's "rule" is merely to determine if the object is currently in its required location. But this is the same "rule"

6

that has always been used for determining if something is in the right place at the right time. The fact that this rule had never before been automated is of no moment. "Stating an abstract idea while adding the words 'apply it with a computer'" cannot impart patent eligibility. *Alice*, 134 S. Ct. at 2358.

Likewise, CalAmp's argument that the '839 Patent "claims a 'specific asserted improvement in computer capabilities'" also fails. (CalAmp's Opp'n Br. 6 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)).) In *Enfish*, the Federal Circuit found the patent to be valid at step one of the *Alice* analysis because "the plain focus of the claims is on an improvement to computer functionality itself." 822 F.3d at 1336. Here, the '839 Patent is not directed to an improvement of computer functionality, but rather to the inclusion of a time element within pre-existing tracking devices. *See* '839 Patent B1 col. 1 ll. 21–39 (describing how prior art tracking devices could indicate whether an object was within a spatial zone, but that "there is a need in the art for an article-tracking device that is capable of automatically indicating whether an article is within a spatial zone during a predetermined time interval"). Moreover, the specification even indicates that the server used in the invention is "preferably a conventional computer system." '839 Patent B1 col. 2 l. 34. The Court must disagree with CalAmp's suggestion that the focus of the claims is on a specific asserted improvement in computer capabilities.

Therefore, at this first stage of the *Alice* inquiry, when looking at the '839 Patent as a whole, the Court determines that it is directed to an abstract idea. The analysis must proceed to *Alice* step two.

## B. Inventive Concept

At the second stage of the *Alice* framework, the Court finds that the '839 Patent

does not add the requisite inventive material to transform the Patent into more than an

attempt to claim dominion over an abstract idea.

Determining whether a patent contains an inventive concept requires the Court to

evaluate the "elements of each claim both individually and 'as an ordered combination.'"

*Amdocs*, 841 F.3d at 1293 (quoting *Alice*, 134 S. Ct. at 2355). It is clear that "an

inventive concept can be found in the non-conventional and non-generic arrangement of

known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,

827 F.3d 1341, 1350 (Fed. Cir. 2016). However, the "mere recitation of a generic

computer cannot transform a patent-ineligible abstract idea into a patent-eligible

invention." *Alice*, 134 S. Ct. at 2358.

In this case, CalAmp argues that the '839 Patent contains an inventive concept

because a subset of database records is stored on the tracking device while the complete

database is stored on the server. It argues that this "specific arrangement of database

records . . . provide[s] technological improvements over [the] prior art systems."

(CalAmp's Opp'n Br. 10.) However, the Court finds that there is nothing particularly

inventive about the '839 Patent's database arrangement. Long before the filing of this

Patent, computer systems had been configured in such a way to allow remote terminals to

access information stored on a centralized database. Applying this database structure to a

tracking system is far from unconventional. Implementing an abstract idea using existing

technology in a conventional way cannot create patent eligibility. *Ultramercial, Inc. v.*

*Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("We conclude that the limitations of the '545 claims do not transform the abstract idea that they recite into patent-eligible subject matter because the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity.")

In an attempt to persuade the Court that the '839 Patent includes an inventive concept, CalAmp compares it to the patents found valid by the Federal Circuit in *Bascom* and *Amdocs*. However those cases are easily distinguished from the claims at issue here. In *Bascom*, the Federal Circuit found that including a filter for internet content, in a unique location, was not a conventional or generic use of that previously known component. 827 F.3d at 1350. The inventive location of a single filter provided the benefits of what previously required two filters, one on the local computer and one on the server. *Id.* Similarly, the court found that the claims in *Amdocs* "recite[] a technological solution to a technological problem specific to computer networks—an unconventional solution that was an improvement over the prior art. *Amdocs*, 841 F.3d at 1303 (addressing representative Claim 16 of U.S. Patent No. 7,412,510). That patent disclosed a new method of enhancing data for collection from multiple sources. By processing each piece of data close to its individual source, the patented invention could prevent network congestion previously experienced when transmitting raw data. *Id.* at 1300.

Neither the *Bascom* nor *Amdocs* patents merely rely "on generic computer components using conventional computer activities." *Bascom*, 827 F.3d at 1351. Rather, they include "'something more' than the performance of 'well-understood, routine, and conventional activities previously known to the industry.'" *Amdocs*, 841 F.3d at 1301

(quoting *Content Extraction*, 776 F.3d at 1347–48). But in this case, the use of a remote database to save storage space on a tracking device is hardly an unconventional solution. It may be true, as CalAmp alleges in its Complaint, that previous tracking systems had not incorporated this particular arrangement of database records. But this database structure had been used in other types of systems for precisely the same reasons cited by CalAmp. Merely incorporating the conventional use of conventional technology is insufficient to establish an inventive concept.

Therefore, the '839 Patent does not provide any inventive material to elevate it beyond an attempt to patent the abstract idea of determining whether an object is in the right place at the right time.

### III. CONCLUSION

Even when viewed in the light most favorable to CalAmp, the claims at issue in the '839 Patent are not patent-eligible subject matter under 35 U.S.C. §101. Therefore, Claims 1, 2, 9, 10, 11, 12, 13, 15, 16, 18, and 19 of the '839 Patent will be invalidated as an unpatentable abstract idea.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Feb 9 2017
Richmond, VA

10